Next on our call this morning are cases, agenda number 16, cases numbered 105-342, 105-348, and 105-349 consolidated. The City of Chicago v. Wideopenwest Illinois, Inc. et al. The parties may proceed as they are ready. Chief Justice Fitzgerald, Justices of the Supreme Court, may it please the Court. My name is Gino DeVito and I represent Comcast and all of the Comcast entities and I speak today also on behalf of RCN and Wideopenwest. The circuit court judge in this case got it absolutely correct. He said, I cannot read either Section 542 or the FCC ruling other than as clearly stating that franchise fees are allowable only to the extent that they do not exceed 5% of gross revenue derived from cable service. Which means excluding any component of that revenue that is derived from cable modem service. The circuit judge referred to a single FCC ruling anticipating a ruling which occurred two years later which established along with all of the actions of Congress and the FCC that his ruling was absolutely correct. This all began in 1972 when through an FCC ruling the FCC said that the ultimate effect of any revenue raising fee is to levy an indirect and regressive tax on cable subscribers. From that time, Congress and the FCC have moved to ensure that no indirect and regressive tax would be imposed upon cable subscribers and as a matter of fact have passed legislation and rules which are designed to ensure the growth and spread of the Internet. In 1984, the Cable Communications Act of 1984 enacted what was then referred to as Section 622B, now Section 542B which is at the crux of this case. That legislation placed a 5% cap on gross revenues from the operation of the cable system. It reads as follows, for any 12-month period, the franchise fees paid by a cable operator, a defined term, with respect to any cable system, another defined term, shall not exceed 5% of such cable operator's gross revenues derived in such period from the operation of the cable system. In 1996, we have the Telecommunications Act of 1966 and that act added four words to provide cable services. The addition of those four words meant that franchise fees are excluded from revenue from cable modem service. And that was made clear on March 15, 2002 when the FCC issued a declaratory ruling saying that cable modem service is properly classified as an interstate information service, not as a cable service. And then it went on to say, given that we have found cable modem service to be an information service, revenue from cable modem service would not be included in the calculation of gross revenues from which the franchise ceiling is determined. That ruling has been upheld by the U.S. Supreme Court in National Cable and Telecommunications Association v. Brand X Internet Service. And finally, on March 5, 2007, two years after the circuit court's ruling in this case, the FCC said, we clarify that a cable operator is not required to pay franchise fees on revenues from non-cable services. The circuit court judge certainly anticipated that and certainly had the act of Congress and a prior FCC ruling when he made the appropriate ruling in this case. Are you saying that the clarification was necessary because it was not clear at the time? It was a clarification, Your Honor, just to clarify. No, I don't believe that it was unclear, although... That is a question. I'm sorry. You're saying, but that is a question, whether or not it was clear. Well, I believe, as the circuit court found, that it was very clear from the Communications Act and from the FCC interpretation. The FCC issued this order in order to remove any uncertainty. If we find that it is not clear, then considering what feelings have been on preemption in the past, would that just not be the end of this? Well, Your Honor, I'm not going to provide any wiggle room for this Court to find that it's unclear. On the contrary, for reasons we have provided in our briefs and I hope to be able to supply today, I hope to convince the Court that there is no lack of clarity here. One of the bases for the clear showing of no lack of clarity is the rulings of all of the federal courts in this country that have ruled on this precise issue. At the time the circuit court issued its ruling, there were a total of four federal district court judges who had issued rulings consistent with what the circuit court issued in this case. This very case, Judge Carr in the federal district court for the Northern District of Illinois, had issued the first ruling right on point, consistent with what the circuit court judge did. In regard to this case involving the City of Chicago, subsequent cases involve Jefferson Parish, Louisiana, City of Rochester, City of Minneapolis. All those federal district court judges faced essentially with the same issues confronting this court ruled in similar fashion. We had a first circuit court of appeals in Liberty Cablevision of Puerto Rico versus the municipality of Caguas. A first circuit court of appeals decision which held that preemption cannot be avoided by labeling a fee as something other than a franchise fee. In that case, it was a right of way fee. And finally, the case that we submitted to your honors just recently, handed down on July 1st, 2008, City of Cincinnati versus Time Warner Cable Inc. from the Southern District of Ohio Western Division. Again, consistent. And that court, by the way, was well aware of the appellate court holding, cited it, and notwithstanding that, properly ruled that the fee on cable modem service was preempted by the Communications Act. The city argues that the fee imposed on cable modem service is based on state law authority and thus not subject to the Cable Communications Act. But neither the statute nor the agreements the city relies upon in this case separates out cable modem service from cable systems, which is a key phrase in 542. And if it did, if it did do so, the explicit preemption language in the Communications Act, found at section 557, addresses the very argument the city makes. That language is any provision of law of any state, political subdivision, or agency thereof, or franchise authority. All of those terms capture what the city of Chicago is in this case. Or any provision of any franchise granted by such authority, which is inconsistent with this chapter, shall be deemed to be preempted and superseded. In view of that language, I find it impossible to understand how the city can insist that the fees it seeks to impose in this case, which they claim are based on state law authority, home rule authority, if you will, is not preempted by the Communications Act. Here we have both express preemption and conflict preemption. And the analysis is fairly simple. I know it's complex, the terms that we've been bandying about in the briefs. But we go first to the definition of the term franchise fee found in section 542G1. And that is simply this. The term franchise fee includes any tax, fee, or assessment of any kind imposed by a franchising authority or other governmental entity on a cable operator or cable subscriber, or both, solely because of their status as such. Every word of that definition is important, and I'll speak to them in a little bit more depth. Cable operator, one of the words, defined in section 552.5. The term cable operator means any person or group of persons, A, who provides cable service over a cable system and directly or through one or more affiliates owns a significant interest in such cable system, or B, who otherwise controls or is responsible for, through any arrangement, the management and operation of such a cable system. The city wants to ignore B, but under either definition, A or B, the defendants in this case qualify as cable operators. And it's upon cable operators that the franchise fee is imposed because of their status as cable operators. What the city does is it alters the definitions I have just provided this court. The city distorts the definition of franchise fee in section 542.1. Instead of any fee of any kind imposed by a franchising authority on a cable operator, solely because of its status as a cable operator, they substitute for cable operator the words cable service. An outstanding example of that, your honors, is found on page 19 of its brief, of the city's brief. A very important page. It happens to be a page that the city even referred to in opposing our effort to have this court consider the city of Cincinnati, the most recent federal district court case. On page 19 of its brief, this is what the city says. Thus, as relevant to this case, section 542's fee cap applies only to fees imposed solely because a company provides cable services and limits those fees to 5% of gross revenues derived from such cable services. Those words solely because, in the definition that I read to your honors, which refers solely because the franchisee is a cable operator, now becomes solely because a company provides cable services. And then, in the next paragraph, here's what the city says. The fee on revenues derived from cable modem service is not imposed solely because these entities provide cable services. Instead, says the city, it is imposed because these entities provide cable modem service. If they offer cable modem service, they owe the fee on cable modem service revenue. If they do not offer that non-cable service, they do not owe the fee. That's the simplistic way in which the city perverts the language. They get away from the fact that these fees are imposed on cable operators because of their status as cable operators. And they pervert it into, they substitute for cable operators, the provision of cable services. That's not what the statute says. It's plain and clear. It's simple. It's clear. One of the city's principal arguments is that Section 542B pertains only to franchise fees for cable services. The city argues that because cable modem service is not a cable service, Section 542B has nothing to do with franchise fees for cable modem service. But that argument directly conflicts with the specific language of Section 542B. The franchise fees provided by Section 542B represent a percentage of gross revenue, quote, derived from the operation of the cable system. Defendants, all the defendants here, Comcast, RCN, Wide Open West, provide cable service to their customers through their cable systems, just as the statute requires. Therefore, to the extent the city charges fees related to defendants' cable modem service, those fees are, to use the language of the statute, imposed with respect to the defendants' cable system. And those fees are governed by Section 542B, the city's protestations to the contrary notwithstanding. Does Mr. DeVito? Yes, Jeff. Communication services, how does that fit into this scheme under the statute, like 541? There's a preservation authority, I think, in that section. Well, your Honor, I believe is referring to Section 541D2. The city invokes that so-called savings clause and says that that establishes the correctness of their argument. Let me read it for your Honors. It says this, nothing in this subchapter shall be construed to affect the authority of any state to regulate any cable operator to the extent that such operator provides any communication service, which is the phrase your Honor used, other than cable service, whether offered on a common carrier or private contract basis. My time is limited, but I'll make a few points concerning that. First of all, the statute refers to a state, not a subdivision, not the city of Chicago, not a political subdivision. In 541D3, that is clear. The statute refers the reader to the definition of state in Section 153. That definition is simply this. The term state includes the District of Columbia and the territories and possessions. Unlike many other provisions of the Communications Act, including the explicit preemption provision that I've called to your Honor's attention, political subdivisions, such as the city, are not included. Not only that, as your Honor points out, communications service is what is discussed in that. And that's what I want to know. How does that fit within cable service? They can franchise fee that, but is that a cable service? And I think your Honor knows the answer by the way your Honor has framed the question. That's exactly the point. Communication service is not an information service. Cable modem service is an information service. I still want to know what is communication service, not what it isn't. It would qualify as a, it would be similar to the kinds of communication service that even cable providers provide. Telephone, for example. Your Honor's, my time is up. I haven't completed. Let me answer counsel's question. I'm sorry. Have you completed your answer? No, there's a few other points to be made. No, no, no. The specific question. About the question. You take a minute and do that. All right, thank you, your Honor. If, in fact, section 541D2 was a savings clause for the city here, then one must wonder why was there a need for Congress to add to provide cable services in 542B? There was absolutely no reason to do that. So that argument is bogus for all the reasons I've given. The definition of state, what communication service means, and what I have just said. And I appreciate your Honor giving me some additional time. Thank you. Solomon, you're welcome to proceed. Thank you. May it please the Court. Benna Solomon for the City of Chicago. This is a case of statutory construction to which both the state and federal courts agree language is the best guide. The statute at issue here, section 542, provides, and you've heard it before, I'll quote some of it again, the franchise fee paid by a cable operator with respect to a cable system shall not exceed 5% of the cable operator's gross revenues derived from operation of the cable system to provide cable services. Defendants agreed to pay, and in fact for years did pay, franchise fees on their revenues from cable modem services. Since the FCC's 2002 ruling that cable modem service is not a cable service, defendants read section 542 to preempt the franchise fee on cable modem service. The fee cap imposed by section 542 on fees paid by a cable operator to provide cable service does not preempt the fee on cable modem service, which is at issue here. Franchise fee is a defined term in the statute. We do not alter, distort, or pervert that definition. We are very comfortable with the definition as written. Ms. Solomon, the federal cases cited by Mr. DeVito, certainly not controlling on this court, but why shouldn't they be persuasive in light of trying to establish some nationwide precedent? They're not persuasive, at least in this case, because none of them addresses the argument that we make. None of them focuses on the definition of franchise fee as we do. Franchise fee is a defined term, and I will walk the court with permission through our reading of the definition, which is extremely faithful to the definition. You can track my argument against the language of the statute, and there will be no perversion or distortion or anything else. Those cases, there may be four or five of them, depending on whether you count the one that's been vacated or not, but they are absolutely not talismanic, and they're not persuasive because none of them is on point. And this court has the independent obligation to review even questions of federal law. The court is well aware those decisions are not binding, and we submit they are not even vaguely persuasive, at least in this case, because not a single one of them addresses the argument that we make. Ms. Solomon, where's the authority in the Act for charging a franchise fee outside of Section 542B? It is not in the Act, Your Honor. Our authority to charge a franchise fee on cable modem service derives from state law and home rule authority. In the lower courts, the defendants challenge that authority. They do not make that argument in this court. They make exactly one argument, and it's preemption. Under two statutes, to be sure, but that's the only argument they make. There are a few stray phrases that crop up in the reply briefs, hinting that perhaps we lack home rule authority. Those arguments are waived. They're not in the petitions for leave to appeal. They're not in the opening briefs. So our authority derives. I'm sorry, Your Honor. No, go ahead. Our authority derives from state law. It derives from the contract. There is no dispute the defendants paid this fee before 2002. They themselves had no doubt. Did they pay it, though, under 542B? And isn't that the only provision in the Act authorizing a municipality to charge a franchise fee? They paid it under the contracts, which have been in existence since 1985. They were reviewed in 2000. They're 15-year terms. They paid under the contract because they used the public ways of the city of Chicago to conduct their business and to make a profit. Every business that uses the public ways to conduct its business and make a profit pays a franchise fee or some other compensation of some kind to the city of Chicago. We charge it pursuant to state law and home rule authority.  They agreed to the contracts. They paid pursuant to the contracts until 2002. They read federal law now that the FCC has ruled that in 542 the phrase cable services does not include cable modem service, they read that to vitiate their obligation under the contract. But as I was explaining, franchise fee is a defined term, and it means. I know you want to get into your definition. This is my place. While we're on the subject of other cases, right, have you cited a single case to this court that has considered the precise issue here and decided it the way that you're asking this court to decide it? Other than the appellate court decision in this case? Right. No. Okay. To our knowledge, and I think the defendants do not agree, for whatever reason the precise issue that we make has not been litigated someplace else. If this court rejects our argument, it would be the first. Thank you. Counsel, to follow up on Justice Burke's question about what authority you rely upon, you mentioned home rule authority and state law authority. Is your state law authority home rule authority, or are you pointing to a specific state statute? No, there is statutory authority authorizing. Is it under the municipal code? I believe it is, Your Honor. We cite it in our brief, and as I did indicate, it's not questioned in this case. On page 7 and 8 of our brief, we cite the statute going back to 1967. Is that the 11-4211 section? It is, Your Honor. Okay. Doesn't that talk about community, it's called community antenna television systems? Yes, Your Honor. And how does that begin to pick up anything more than just transmitting your normal, traditional television signals, you know, for ABC, CBS, et cetera? Right. Well, it's a system, not a signal. And the service provided here, the franchise authority given to the city, in addition to home rule, assuming we need the statute, the franchise authority under the statute cited in our brief, pages 7 and 8, are to franchise the system that a cable TV, cable company would operate to provide cable services. The contract in turn, the auxiliary services definition in particular, defines the revenues on which the defendants owe the franchise fee as any service using the cable television system. And as I indicated, the state law issues are gone from this case. As the case comes to this court, there is a preemption question and a preemption question only. Is it your position that the federal law, that 542 has no application to this situation? It is our position that 542 does not preempt the city's ability to obtain a franchise fee on cable modem service. We readily admit that that section has some preemptive effect. Would the city be, could the city impose a 10% fee? On cable modem service? If we could get that through a bargain negotiation. And the reason I say that is because, you know, this is not, this was not imposed unilaterally by the city of Chicago. This is a contract. It was bargained for on both sides. The 5% fee reflects that the same percentage is taken from all gross revenues. We could not take 10% on cable service revenues because that would actually conflict with an express fee cap in Section 542. To that extent, that section has preemptive effect. To the extent of any conflict, of course, the city's authority would be preempted. But because Section 542 does not address cable modem service at all, and it doesn't, it deals with cable service, and the FCC itself says cable service does not include cable modem service. So although some of the words are the same, cable service does not include cable modem service, and the fee cap does not preempt. The section does have some preemptive effect, but not on what is at issue in this case. And that is because franchise fee is a defined term. The franchise fee as defined by the Cable Act is a fee imposed on a cable operator solely because of its status as a cable operator. The fee at issue here is not imposed solely because the defendants are cable operators. It is imposed because in addition to being cable operators, they also provide cable modem service. We readily agree that they are cable operators under one or both sections of the definition. That is not dispositive here. We also agree that they provide cable modem service over the cable system, but that is also not dispositive here. The operative words in the definition is a fee imposed on a cable operator solely because of its status as a cable operator. The defendants could be cable operators without offering cable modem service, and they could offer cable modem service without being cable operators. That is why we know the franchise fee on cable modem service is not imposed solely because they are cable operators. And for that reason, in turn, it is not capped, it is not even regulated by Section 542. Defendants have made their position clear. They read the fee cap on cable services to be a prohibition of even a penny on any other kind of revenue. But they can't get there through the preemption doctrine. Preemption is a disfavored doctrine. Comcast criticizes the appellate court for that statement, but it is absolutely correct. Comcast provides no citation when it criticizes the appellate court for that statement, and that is because the cases are all to the contrary. In our brief, we cite a number of cases from the United States Supreme Court expressly holding that preemption is disfavored. It will not be implied. It will particularly not be implied when the police power of state and local governments is at issue. And that is true even where there is an express preemption provision. We cite at least three cases in our brief that involve express preemption provisions, far more express than the one in this statute. And in each of them, these include the Ours Garage case, Roe against New Hampshire, and the Spritzma case. In each of those, the court first undertakes to determine the scope of the express preemption provision. And then it determines whether there is preemption or not. There's nothing magical about an express preemption provision. And in this case, this is not even you can call it an express preemption provision if it pleases you to call it that. But what it says is that anything that is actually in conflict with the Cable Act will be preempted. That kind of provision codifies the supremacy clause. The act would have the same preemptive effect if that clause were not in it. It doesn't actually help figure out what is preempted and what isn't. The way to figure that out is by whether there is a conflict or not. And for the reasons that I have given, there is not a conflict. The statutory language on which the defendants rely does not come close to meeting the high threshold necessary for implied preemption. It does not expressly or impliedly preempt a franchise fee on cable modem service. It does not even mention cable modem service. And as I indicated a minute ago, the cable service to which it does refer does not include cable modem service. This is not express preemption. If there is preemption here, it would be by silence, and that is not permissible, as the Supreme Court of the United States repeatedly reminds us. The statute does cap the franchise fee from operation of the system to provide cable service, but conflict preemption does not read that kind of a fee cap on some other kind of service to preempt a fee on a wholly different service, namely cable modem service. If Congress had intended to preempt a fee on cable modem service, it would have, and indeed it needed, preempt a fee on a whole different service. In fact, in addition, we cite in our brief four sections of the statute that make clear why this particular clause should not be read as preemptive. I'm going to go through them extremely quickly and by section number, which in general one never does, because they are all in our brief. But these are, very quickly, section 541D2, which expressly preserves the power of any state to regulate to the extent that something other than cable is being provided. And in answer to the question here, we think the reason that that section refers to the word state, not because it doesn't include local governments as well, but to make clear that there's an intermediate step necessary before local governments are able to take advantage of the authority that is preserved in that section. So in other words, in many states, as in Illinois, the state regulates cable and other communication services by delegating it to local governments. All Congress wanted to make clear in that section is that if that state law authority is not present, section 542, excuse me, 541D2 is not conferring the authority. That is, again, not preemption, particularly where in Illinois the authority does exist. So that's the first of the four other sections. The second, uncodified section 601 of the 1996 amendment says, quote, no implied preemption. Number three, section 542H1, again, referring to cable or other communication services. And finally, section 253C. This provision was added at the same time as the 96 amendment, adding the words to provide cable service to section 542. It provides that a reasonable compensation may be obtained from telecommunications. That's why 542 was narrowed, because at the same time that Congress was amending 542 to limit it to cable services, it was adding to Title II to require a fee on telecommunications services. And that's all that Congress had in mind. Internet services were not available at all, or certainly not widely available the last time Congress looked at this statute. There is no statement by Congress, Congress never even thought about cable modem service. The FCC, which has thought about cable modem service, does not preempt the authority at issue here either. First of all, given the statute, it's not even clear the FCC could preempt if it wanted to. Counsel, let me ask you this question. Does the FCC ruling that you just referred to, is that not encompassed with any of the definition concepts that are in these agreements as a matter of contract law, with all these references to the Federal Communication Act? There is a reference in the cable ordinance to interpreting the ordinance and the definitions in accordance with the Federal Communications Act. Section 542, again, that simply codifies conflict preemption. That means we cannot be inconsistent. It does not say, and we're going to go down lockstep with the FCC. City Council would never do that. We have independent regulatory authority under the state statute, under home rule. There's no reason to tie our horse to that wagon, and we didn't. It just says we won't be inconsistent. And it's not inconsistent because the federal statute doesn't address it. So we can do what we do and interpret it as we do, as long as we're not inconsistent with the federal statute. And I have attempted to provide the court a clear roadmap with how to get from here to there without being inconsistent. The FCC rulings actually deal, they're very, very lengthy, but they do deal with a different issue, whether cable modem service should be regulated as either a cable service or telecommunications service. And the FCC said no to both. Instead, cable modems should be regulated as an information service. That means it's under Title I of the Communications Act. It is absolutely a communications service. It is just not a cable service or a telecommunications service. In closing, I want to stress only one thing. The parties have been at this a very long time, and it may seem like inside baseball. But there's a very easy way to resolve the issue here, and the answer lies in the requirements of preemption. It requires, as I indicated at the outset, a clear and manifest intent. We think it is clear and clear in our favor that there is no conflict. If the court is uncertain on that, however, ties go to the party urging no preemption. Implied preemption cannot be done on the basis of uncertainty. And for that reason, we do ask that the judgment of the appellate court be affirmed. Thank you. I'll be brief, Your Honors. Counsel has told you that ties go to the city in this case. There's no basis for considering this to be even close. We have expressed preemption. I've read it to you, perhaps more forcibly than needed to be done, which takes into account the city's claim that its home rule authority sort of trumps everything else here. And we have explicit conflict preemption. Let me just respond to a couple of things that counsel said. She said, in addition to being cable operators, they, these cable operators, provide cable modem service. And that's why we are justified in imposing a franchise fee. But the direct response to that statement is that under the statute, under 542B, the reason they can impose a franchise fee on cable operators is because of their status as cable operators, not because they're providing modem service, because that's exactly what's preempted by 542. And the proof of that is the reality that there are other Internet providers, communication, telecommunications entities, such as AT&T and others who provide DSL Internet access. Those people are not subject to this. They're not subject to the franchises, the franchise fees that the city is seeking in this case. Why? Because the basis for obtaining franchise fees is because these defendants are cable operators, and it's tied to their status as cable operators. The same rule does not apply to the telecommunication companies. So the fact that Comcast and the others provide cable modem service is not, as the city would have it, sufficient justification to impose a franchise fee, because the only justification is to do it against cable operators because of their status. Council, the city, would have you believe that there are numerous franchises here. There's only one franchise, only one franchise, and it's connected to the provision of a cable system, of which cable modem is one result. Cable services is another. It's a system, and again, relying upon the language of the relevant statute, we're talking about the cable system, so that there's only one provision for the franchise, for the franchise fee. The statutes, state statutes that they rely upon, don't separate out modem service. The contract that they're relying upon does not separate out modem service. These are franchise fees based upon provision of cable systems. So you can look to the state statutes, you can look to the contracts that they're endeavoring to invoke, and their case, their argument, simply doesn't hold water. I've taken enough of Your Honor's time, but if you have any questions, I'll be happy to try to address it. Well, just maybe a follow-up question about, you take the position that if it's a cable service, that's within the franchise fee, correct? Yes. All right, and basically television programs are, that's what you say is part of cable service. Absolutely. Okay, so how does this evolving technology with the Internet, when I can sit down on my computer at home and blink up on the Internet and go watch reruns of Meet the Press from Sunday morning over the Internet, and when I'm now watching a television program, does that begin to muddy the water of what is a cable service? No, I think it's clear what is an Internet or a modem service as opposed to a cable service. I don't believe you could watch the rerun of the Meet the Press show without the modem service, even though it may, in the first broadcast, have been a cable service. One of the justices, I'm not sure whether it was Justice Burke or Justice Garmon, asked me a question about cable service. He asked about, could a 10% fee be imposed upon the provision of cable modem service? And the answer is an emphatic yes. I know that the city says, well, if they'll agree to it, but the answer is yes, a 20%, a 50% fee. So one must question, why did Congress amend 542 in the way it did to make it a 50% fee? To take cable modem service out, they tell you that cable modem service is even addressed by 542B. But the addition of those four words clearly showed that Congress was thinking of Internet, that the FCC was thinking of it in its interpretation. Well, Mr. DeVito, I guess one last follow up. I'm not sure I can answer it, but I would think that the latter would be the answer. But don't hold me to that. For all the reasons we've given and what we've argued in our briefs, we ask your honors to reinstate the circuit court judgment and reverse the case. Thank you very much.